UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JASON CANNON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-736 (GK) |
| | ) | |
| HENRY M. PAULSON, JR., | ) | [Redacted Version][1] |
| Secretary, United States | ) | |
| Department of the Treasury, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Jason Cannon, a former employee of the Internal Revenue Service ("IRS"), brings this suit pursuant to the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701 et. seq., against Secretary of the Treasury Henry M. Paulson, Jr. This matter is before the Court on Defendant's Motion for Summary Judgment [**Dkt. No. 24**]. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, Defendant's Motion for Summary Judgment is **denied** as to Count I of the Complaint, and **granted** as to Count II.

---

[1] Portions of the parties' summary judgment papers were filed under seal pursuant to a Protective Order issued January 29, 2007. Underlined portions of this Memorandum Opinion have accordingly been redacted from the version publicly filed on the CM/ECF system.

**I.     BACKGROUND**[2]

Plaintiff, who was fifty-two years old when this case was filed, was previously employed as a telecommunications specialist with the IRS.  According to the Complaint, he suffers from a number of medical conditions, including heart disease, depression, panic disorder, nephrotic syndrome, anemia, and sleep apnea.  He alleges that his sleep apnea, depression, and panic disorder substantially limit major life activities, such as his short-term memory, ability to concentrate, and ability to interact with others.

Like all employees in his section, Cannon was permitted to telecommute four days a week from home.  As an accommodation, he requested that he be allowed to work five days a week from a General Services Administration telecommuting center in Stafford, Virginia, approximately three miles from his home.  (Stafford is approximately seventy-five miles from IRS headquarters in Washington, D.C.).  The Defendant claims that he made this request because his physician advised him that the telecommuting center would provide a more structured environment.  Plaintiff claims that this accommodation request was denied.  The Defendant contends that Cannon withdrew the request before it was acted upon.

---

[2] Unless otherwise noted, the facts set forth herein are undisputed and drawn from the parties' Statements of Material Facts Not in Dispute submitted pursuant to Local Civil Rule 7(h), the Complaint, and the parties' summary judgment papers.

The Complaint alleges that in April 2002, Cannon's supervisor, Linda Wallace, pressured him into submitting his disability retirement paperwork by that May. The Defendant contests this account, arguing that Cannon considered various options, but voluntarily chose to apply for disability retirement in May 2002.

On July 11 2002, Cannon filed an EEO complaint requesting that he be allowed to work from the Stafford telecommuting center. He claims that this request was denied.

On September 30, 2002, Cheryl Opalack, an IRS physician, wrote that

> Mr. Canon [sic] suffers from a chronic serious medical condition which effects [sic] his activities of daily life. Whether his condition will improve over the long term is in question; however, this employee is very motivated to work and the accommodation requested would allow him to perform his job most efficiently. This employee, therefore, meets the medical criteria for ADA and I would recommend that his accommodation be instituted.

Letter from Cheryl Opalack to Rona Evans (IRS EEO Officer), Sept. 30, 2002 (Investigative File, p. 404).

Cannon retired due to disability on September 12, 2003. He claims that his retirement was forced on him and amounted to a constructive discharge in violation of the Rehabilitation Act. The Defendant argues that Cannon's decision to accept disability retirement was voluntary.

Cannon's initial EEO complaint did not allege constructive discharge. On August 11, 2004, he filed a motion to amend his

3

administrative complaint to include the constructive discharge claim. Plaintiff then filed suit in this Court before the administrative law judge could rule on his motion to amend. According to two sworn declarations submitted by the Defendant, and based upon a review of the Defendant's files and incoming mail and facsimile logs, the Defendant was never served with a copy of the motion.

Plaintiff's Complaint alleges two causes of action. In Count I, Plaintiff alleges that the Defendant failed to make reasonable accommodations for his disability in violation of the Rehabilitation Act. In Count II, Plaintiff claims that he was constructively discharged in violation of the Rehabilitation Act. Defendant has filed a motion seeking summary judgment on both counts.

## II. STANDARD OF REVIEW

Summary judgment may be granted "only if" the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c), as amended December 1, 2007; Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006). In other words, the moving party must satisfy two requirements: first, demonstrate that there is no "genuine" factual dispute and, second, that if there is it is "material" to the case. "A dispute over a material fact is

'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Arrington, (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" if it might affect the outcome of the case under the substantive governing law. Liberty Lobby, 477 U.S. at 248.

In its most recent discussion of summary judgment, in Scott v. Harris, __ U.S. __, 127 S. Ct. 1769, 1776 (2007), the Supreme Court said,

> [a]s we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 . . . (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Liberty Lobby, 477 U.S. at 247-48.

However, the Supreme Court has also consistently emphasized that "at the summary judgment stage, the judge's function is not...to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 248, 249. In both Liberty Lobby and Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000), the Supreme Court cautioned that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts, are jury functions, not those

of a judge" deciding a motion for summary judgment. Liberty Lobby, 477 U.S. at 255. In assessing a motion for summary judgment and reviewing the evidence the parties claim they will present, "the Court must draw all reasonable inferences in favor of the non-moving party." Reeves, 530 U.S. at 150. "To survive a motion for summary judgment, the party bearing the burden of proof at trial...must provide evidence showing that there is a triable issue as to an element essential to that party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)." Arrington, 473 F.3d at 335.[3]

**III. ANALYSIS**

    **A.    The Defendant Is Not Entitled to Summary Judgment on Count I (Failure to Accommodate Plaintiff's Disability)**

To establish a prima facie case of discrimination in violation of the Rehabilitation Act, a plaintiff must show (1) that he or she is an individual with a disability within the meaning of the Act; (2) that he or she can otherwise perform the essential functions of his or her position with a reasonable accommodation; and (3) that the employer refused to make the reasonable accommodation or terminated the plaintiff's employment because of the disability. Chinchillo v. Powell, 236 F. Supp. 2d 18, 23 (D.D.C. 2003).

---

[3] It should be noted that a non-movant's affidavit may suffice to defeat a summary judgment motion if the parties' sworn statements are materially different. Greene v. Dalton, 164 F.3d 671, 674-75 (D.C. Cir. 1999); Arrington, 473 F.3d at 337.

The Defendant challenges Plaintiff's prima facie case on two grounds.[4]

First, the Defendant argues that Cannon did not have a disability within the meaning of the Rehabilitation Act. In particular, he argues that Plaintiff's inability to work was actually caused by _____

_____

_____. See Nielsen v. Moroni Feed Co., 162 F.3d

---

[4] Claims under the Rehabilitation Act are governed by the burden-shifting framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). McGill v. Muñoz, 203 F.3d 843, 845 (D.C. Cir. 2000).

Under this framework, the plaintiff must first establish, by a preponderance of the evidence, a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. Once the plaintiff establishes a prima facie case, the defendant must "'produc[e] evidence' that the adverse employment actions were taken 'for a legitimate, non-discriminatory reason.'" Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1289 (D.C. Cir. 1998) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993)). Once the defendant has done so, "the presumption...raised by the prima facie case is rebutted" and "drops from the case." Id. (quoting Hicks, 509 U.S. at 507). For purposes of surviving summary judgment, the plaintiff must then show that a reasonable jury could infer that the proffered legitimate reason was false and that defendant's actions were intended as discrimination from a "combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff." Id. at 1289.

Here, Defendant apparently only argues that Plaintiff has not made out a prima facie case of discrimination and never sets forth a non-discriminatory reason for its actions. Accordingly, the Court will only address the first step in the McDonnell Douglas burden-shifting analysis.

604, 609 (10th Cir. 1998) (unsatisfactory conduct caused by drug and alcohol abuse not protected by the Rehabilitation Act). Although Plaintiff testified at his deposition that he suffered from side effects from his prescription medications and _____, a genuine issue of material fact remains concerning whether Plaintiff is disabled within the meaning of the Rehabilitation Act.  Plaintiff testified that a combination of sleep apnea, cardiovascular disease, depression, and panic attacks adversely affected his ability to function at work, independent of any side effects associated with his prescription medications. See Deposition of Jason Cannon, Sept. 19, 2006 at 55-57.  Significantly, Dr. Opalack, the IRS' own physician, also believed that Plaintiff satisfied "the medical criteria for ADA."[5] This is sufficient to raise a genuine dispute as to whether Plaintiff was disabled under the Act.

Second, the Defendant argues that Plaintiff was incapable of performing his job and was therefore not qualified under the Rehabilitation Act.  Here too, there is a genuine dispute of material fact that precludes summary judgment.  Dr. Opalack believed that Plaintiff's requested accommodation "would allow him to perform his job most efficiently."  This is sufficient to raise

---

[5] The Rehabilitation Act provides that the same standards set forth in the Americans with Disabilities Act ("ADA"), apply to cases alleging employment discrimination in violation of the Rehabilitation Act.  29 U.S.C. § 794(d)

a genuine dispute of material fact concerning whether Plaintiff could otherwise perform the essential functions of his position with a reasonable accommodation.

Therefore, Defendant's Motion for Summary Judgment is **denied** as to Count I.

### B.  Plaintiff Failed to Exhaust His Administrative Remedies on Count II (Constructive Discharge)

Plaintiffs seeking relief under the Rehabilitation Act must comply with the administrative exhaustion requirements of Title VII of the Civil Rights Act of 1964. 29 U.S.C. § 794a(a)(1); Thorne v. Cavazos, 744 F. Supp. 348, 350 (D.D.C. 1990). Pursuant to authority granted to it under Title VII, the Equal Employment Opportunity Commission ("EEOC") has promulgated "detailed procedures for the administrative resolution of discrimination complaints." Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997). "Complainants must timely exhaust these administrative remedies before bringing their claims to court." Id. The EEOC regulations allow a previously filed administrative complaint to be amended "at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint." 29 C.F.R. § 1614.106(d). To do so, the complainant must file a motion with the administrative law judge, after first requesting a hearing. Id.

In this case, Plaintiff filed his administrative complaint, without including an initial allegation of constructive discharge,

and he represents that he later filed a motion to amend to include that claim. However, the administrative law judge never ruled on the motion and the Defendant has presented evidence that it was never served with a copy of that motion to amend. The regulations do not allow a complainant to amend his or her administrative complaint as of right; instead, the complainant must seek and receive leave to do so from the administrative law judge. Id. This did not happen here.

However, this does not end the inquiry. A plaintiff may still proceed on a claim that was not administratively raised below if the new claim is "like or related to" a previously filed claim. Wiley v. Glassman, __ F.3d __, 2007 WL 4354431, at *7 (D.C. Cir. Dec. 14, 2007). The Court of Appeals reasoned that if the new claim is "like or related to" the initial claim, the defendant has been given an opportunity to resolve the claim at the administrative level, before a complaint was filed in District Court. Id. Plaintiff cannot satisfy this test.

To establish a claim for constructive discharge, Plaintiff must establish not only discrimination on the basis of his disability, but that the Defendant created or tolerated "discriminatory working conditions that would drive a reasonable person to resign." Katradis v. Dav-El of Washington, D.C., 846 F.2d 1482, 1485 (D.C. Cir. 1988). By contrast, a claim that an employer failed to accommodate an employee's disability focuses on

10

whether the employee suffers from a disability, whether the employee can perform his or her job with a reasonable accommodation, and whether the employer failed to make such reasonable accommodation. See Chinchillo, 236 F. Supp. 2d at 23.

For this reason, other courts have held that claims of constructive discharge are not sufficiently similar to claims of discrimination under the "like or related to" test to proceed if one of the claims was not raised at the administrative level. See Tart v. Hill Behan Lumber Co., 31 F.3d 668, 672-73 (8th Cir. 1994) (constructive discharge claim not "like or related to" racial harassment claim); Cedar v. Premier Industrial Corp., 1989 WL 20615, at *3-4 (6th Cir. Feb. 28, 1989) (constructive discharge claim not "like or related to" discriminatory demotion claim). Additionally, the alleged failure to accommodate the Plaintiff's disability in this case occurred more than a year prior to his alleged constructive discharge. Plaintiff has therefore failed to show that his constructive discharge claim is "like or related to" his failure to accommodate claim and that he put Defendant on notice of the former. The Defendant is therefore entitled to summary judgment in his favor on Count II.

### C. Even If Plaintiff Had Exhausted His Administrative Remedies as to Count II, His Constructive Discharge Claim Would Fail as a Matter of Law

Even if Plaintiff had properly exhausted his administrative remedies as to Count II, Plaintiff's constructive discharge claim

would fail on the merits as a matter of law. To succeed on such a claim, Plaintiff "must show that the employer deliberately created intolerable work conditions that forced the plaintiff to quit." Veitch v. England, 471 F.3d 124, 130 (D.C. Cir. 2006). Constructive discharge "does not occur when an employee leaves an unpleasant but objectively tolerable job because alternatives have become more attractive, even if the employer's misbehavior creates the unpleasantness or...its largesse affirmatively increases the appeal of the employee's alternatives." Taylor v. FDIC, 132 F.3d 753, 766 (D.C. Cir. 1997).

Thus, even a pattern of alleged harassment by a supervisor of an evangelical Protestant Navy chaplain that included tearing a "Reformation Conference" poster from the chaplain's wall, assigning the chaplain to conduct prayer services that were "inimical" to the chaplain's religious beliefs, as well as the existence of a "general anti-evangelical environment" in the work place, were collectively not sufficient to make the chaplain's work conditions intolerable such that he was forced to resign. Veitch, 471 F.3d at 131 (applying Title VII principles to claim of constructive discharge in violation of First Amendment).

In a very different employment context, the Court of Appeals held in Taylor that a reassignment of employees to a separate office unit for a period of years during which time they were denied meaningful work, support staff, and supplies, and were

12

"ostracized by former colleagues afraid to be seen with them," 132 F.3d at 759, did not create a work environment so intolerable that a reasonable person would be driven to resign.  Id. at 766.

In this case, Plaintiff argues that his supervisor's repeated requests that he retire, her decision to bar him from the IRS office building, and her formal evaluation of Plaintiff's performance as only "fully successful" in 2002, compared to ratings of "outstanding" in 2000 and 2001, were deliberate attempts to make Plaintiff's working conditions intolerable.  This falls far short of what a plaintiff must show to establish a constructive discharge claim in this Circuit.  At the very most, these conditions created the sort of "unpleasantness" for Plaintiff that "increase[d] the appeal" of the IRS' offer of disability retirement.  See Taylor, 132 F.3d at 766.  This is insufficient as a matter of law to set out a claim of constructive discharge.  For this additional reason, Defendant's Motion for Summary Judgment is **granted** as to Count II.

**IV. CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment [**Dkt. No. 24**] is **denied** as to Count I of the Complaint and **granted** as to Count II.  An Order shall accompany this Memorandum Opinion.

January 3, 2008

/s/
Gladys Kessler
United States District Judge

**Copies to: Attorneys of record via ECF**

**Copies to: Attorneys of record via ECF**